**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SOUTH32 SA INVESTMENTS LIMITED,
7 Albemarle Street
London, England
W1S 4HQ,

        Petitioner,

  v.

REPUBLIC OF COLOMBIA
Ministerio de Relaciones Exteriores
Calle 10 NO.5-51
Palacio de San Carlos
Bogota, Colombia,

        Respondent.

Civil Action No. \_\_\_

**PETITION TO RECOGNIZE AND**
**ENFORCE AN ICSID ARBITRATION AWARD**

**FRESHFIELDS US LLP**
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
*Attorneys for Petitioner*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

THE PARTIES ..................................................................................................................................... 2

THE DISPUTE AND THE AWARD ................................................................................................... 2

LEGAL BASIS FOR RELIEF ............................................................................................................. 7

    I.   This Court Has Jurisdiction to Recognize and Enforce the Award Because Colombia Does Not Benefit from Sovereign Immunity ................................................................................. 7

    II.  The Court Should Not Entertain Any Substantive Challenges to the Award. ....................... 9

    III. The Award Must Be Given Full Faith and Credit Pursuant to 22 U.S.C. § 1650a. ............. 10

PRAYER FOR RELIEF .................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Blue Ridge Invs., LLC v. Republic of Argentina*,
 735 F.3d 72 (2d Cir. 2013) ............................................................................................... 7

*ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*,
 628 F. Supp. 3d 1 (D.D.C. 2022) .................................................................................... 11

*Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*,
 904 F. Supp. 2d 131 (D.D.C. 2012) ................................................................................ 11

*Micula v. Gov't of Romania*,
 404 F. Supp. 3d 365 (D.D.C. 2019) .................................................................................. 8

\**Micula v. Gov't of Romania*,
 101 F.4th 47 (D.C. Cir. 2024) ...................................................................................... 9, 11

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
 2015 WL 926011 (S.D.N.Y. Mar. 4, 2015) .................................................................... 11

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
 863 F.3d 96 (2d Cir. 2017) ................................................................................................ 9

\**NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*,
 112 F.4th 1088 (D.C. Cir. 2024) ....................................................................................... 7

*Pezold v. Republic of Zimbabwe*,
 2023 WL 5547912 (D.D.C. Aug. 9, 2023) ........................................................................ 7

*Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*,
 590 F. Supp. 3d 262 (D.D.C. 2022) ................................................................................ 10

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*,
 2022 WL 17370242 (D.D.C. Aug. 3, 2022) ................................................................ 9, 11

\**Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Exteriores*,
 87 F.4th 510 (D.C. Cir. 2023) ...................................................................................... 9, 10

**Statutes**

\*22 U.S.C. § 1650a ..................................................................................... 1, 8, 9, 10, 11

28 U.S.C. § 1330 .................................................................................................... 7, 8

28 U.S.C. § 1391 ........................................................................................................ 8

| **Statutes** | **Page(s)** |

28 U.S.C. § 1603 ............................................................................................................................. 2

28 U.S.C. § 1605 ............................................................................................................................. 7

28 U.S.C. § 1608 ............................................................................................................................. 8

**Treaties**

Convention of 15 November 1965 on the Service Abroad of Judicial and
    Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20
    U.S.T. 361, 658 U.N.T.S. 163 .................................................................................................. 8

*Convention on the Settlement of Investment Disputes between States and
    Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 .......................... 1

Petitioner South32 SA Investments Limited ("South32" or "Petitioner"), by and through its attorneys, states as follows:

**INTRODUCTION**

1. Petitioner respectfully seeks recognition and enforcement of an arbitration award pursuant to 22 U.S.C. § 1650a and Article 54 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 (the "ICSID Convention"). The arbitration award (the "Award") was rendered on June 21, 2024, against Respondent, the Republic of Colombia ("Colombia"), following an arbitration under the ICSID Convention and the arbitration rules of the International Centre for the Settlement of Investment Disputes ("ICSID"). In the Award, the arbitral tribunal ("Tribunal") found that Colombia had breached its obligations to Petitioner under the bilateral investment treaty between the United Kingdom and Colombia (the "U.K.-Colombia BIT"), and awarded Petitioner damages and costs, with interest, along with an indemnity against future losses. A certified copy of the Award, together with a certified copy of the Decision on Request for Rectification (which forms part of the Award under Article 49(2) of the ICSID Convention), is attached as Exhibit A to the accompanying Declaration of Caroline S. Richard in support of Petitioner's Petition to Recognize and Enforce an ICSID Arbitration Award ("Richard Declaration" or "Richard Decl."), dated March 4, 2025.[1]

---

[1] The relevant articles of the ICSID Convention are attached as Exhibit B to the Richard Declaration. Certain clerical errors in the Award were corrected in the Decision on Request for Rectification, dated January 29, 2025 ("Decision on Rectification"). *See* Richard Decl. ¶ 3.

## THE PARTIES

2. Petitioner is a private limited liability company incorporated under the laws of England and Wales, with its principal place of business located at 7 Albemarle Street, London, England, W1S 4HQ.

3. Respondent the Republic of Colombia is a foreign State within the meaning of the Foreign Sovereign Immunities Act ("FSIA"). *See* 28 U.S.C. § 1603(a). Colombia is currently a signatory to the ICSID Convention and was also a signatory to the ICSID Convention on March 11, 2020, the date that Petitioner initiated the Arbitration.

## THE DISPUTE AND THE AWARD

4. The dispute underlying the arbitration arose from a series of retroactive royalties imposed by Colombia on Cerro Matoso S.A. ("CMSA"), a company owned by Petitioner that holds the right to exploit Cerro Matoso, a nickel mine in Córdoba, Colombia. *See* Richard Decl. Ex. A (Award), at ¶¶ 46-47, 49, 56, 61; Richard Decl. ¶¶ 5-6.

5. For over forty years, CMSA has developed and exploited nickel ore at the Cerro Matoso mine, in order to produce ferronickel. CMSA did so under concession contracts 866 and 1727 between 1982 and 2012, and thereafter under mining contract 51. *See* Richard Decl. Ex. A (Award), at ¶¶ 54, 56. CMSA is required to pay royalties to Colombia in consideration for the right to exploit the Cerro Matoso mine. These royalties are calculated by multiplying: (i) the quantity of nickel extracted; (ii) by a royalty rate; and then (iii) by a reference price for nickel ore from which a percentage of certain costs was to be deducted. *Id.* at ¶¶ 54-55, 70-79.

6. Beginning in 2015, Colombia adopted nine different measures that Petitioner alleged were in breach of the U.K.-Colombia BIT. In particular, Colombia:

    a. retroactively reassessed royalties paid by CMSA between 2005 and 2012 on the alleged basis that they had been calculated applying:

        i. the wrong royalty rate and percentage of deductible costs; and

        ii. the incorrect reference price formula;

    b. retroactively reassessed royalties paid by CMSA between 1982 and 2012 on the alleged basis that they had been calculated by improperly deducting certain costs; and

    c. retroactively charged iron royalties over the iron oxide contained in the nickel ore exploited by CMSA, even though Colombia had previously only charged nickel royalties. *See* Richard Decl. ¶ 6.

7. Based on the above measures, on March 11, 2020, CMSA's parent and Petitioner here, South32, filed with ICSID a request for arbitration against Colombia under the U.K.-Colombia BIT. *See* Richard Decl. Ex. A (Award), at ¶¶ 1, 6. The U.K.-Colombia BIT is attached as Exhibit C to the Richard Declaration. In the request for arbitration, Petitioner argued that Colombia breached the U.K.-Colombia BIT's guarantees of non-discrimination, fair and equitable treatment, and full protection and security for the nickel mine investment by arbitrarily and retroactively reassessing past royalties paid by CMSA over more than forty years, and arbitrarily assessing royalties from 2015 onwards. *See* Richard Decl. ¶ 8.

8. On November 17, 2020, the Tribunal was constituted in accordance with Article 37(2)(b) of the ICSID Convention. *See* Richard Decl. Ex. A (Award), at ¶¶ 8, 10; Richard Decl. ¶ 8.

9. The arbitration proceedings were extensive, and Petitioner and Colombia participated fully at every stage. In its pre-hearing written submissions, Colombia contested the Tribunal's jurisdiction, the merits of the dispute, and the damages claimed by Petitioner. *See* Richard Decl. Ex. A (Award), at ¶¶ 15, 20; *see also* Richard. Decl. ¶ 10. Petitioner likewise

submitted substantial pre-hearing written submissions on jurisdiction, the merits, and damages. *See* Richard Decl. Ex. A (Award), at ¶¶ 14, 19, 21; Richard. Decl. ¶ 10. The Tribunal also ordered both parties to produce documents. *See* Richard Decl. Ex. A (Award), at ¶¶ 16-17; Richard. Decl. ¶ 10. On March 15-17, 2023, the Tribunal held a hearing on jurisdiction, merits, and damages in Washington, D.C., *see* Richard Decl. Ex. A (Award), at ¶ 35, at which the parties made oral submissions and examined witnesses, *see* Richard Decl. ¶ 10. The parties subsequently submitted post-hearing briefs and the parties' damages experts submitted a Joint Valuation Model. *See* Richard Decl. Ex. A (Award), at ¶¶ 42-44; Richard Decl. ¶ 10.

10. On June 21, 2024, the Tribunal issued its 179-page Award, unanimously finding that the Tribunal had jurisdiction over Petitioner's claims and that Colombia had breached Article II.3 of the U.K.-Colombia BIT, which provides a guarantee of fair and equitable treatment for investors.[2] *See* Richard Decl. Ex. A (Award), at ¶¶ 208-09, 887; Richard Decl. ¶ 11.

11. The Tribunal unanimously ruled in favor of Petitioner on eight of the nine challenged measures (the "Measures in Breach"). *See* Richard Decl. Ex. A (Award), at ¶¶ 755-56, 887; Richard Decl. ¶ 11. Specifically, the Tribunal found that the measures described in paragraph 6 above violated the guarantee of fair and equitable treatment contained in Article II.3 of the U.K.-Colombia BIT. *See* Richard Decl. Ex. A (Award), at ¶¶ 755-56. The Tribunal then awarded compensation to Petitioner in the form of (i) historical damages and (ii) an indemnity for any future damages. *See* Richard Decl. ¶¶ 11-12.

---

[2] Although all members of the Tribunal agreed that Colombia had breached the U.K.-Colombia BIT, the arbitrator appointed by Colombia issued a partial dissent regarding future damages and the majority's reasoning on the nature of State conduct that may give rise to international responsibility. *See* Richard Decl. Ex. A (Award), Dissenting Opinion of Arbitrator Andrés Jana Linetzky, at ¶¶ 2, 69, 87.

12. The Tribunal ordered Colombia to pay Petitioner historical damages in the amount of $4,519,417,[3] plus interest at a rate equal to the average annual U.S. Prime rate plus 2%, compounded semi-annually, from July 27, 2023 until the date of payment. Richard Decl. Ex. A (Award), at ¶¶ 787, 887; Richard Decl. Ex. A (Decision on Rectification), at ¶ 101; Richard Decl. ¶ 12.

13. As detailed above, some of the Measures in Breach have already been enforced against CMSA, giving rise to historical damages, while others have not yet been enforced against CMSA. Therefore, the Tribunal also awarded what it termed "future damages," *i.e.*, an indemnity to Petitioner if Colombia continues to demand payment of iron royalties for future periods and/or enforces the other Measures in Breach. *See* Richard Decl. Ex. A (Award), at ¶¶ 835-39; Richard Decl. ¶¶ 11-12. The Tribunal found the future enforcement of the Measures in Breach to be foreseeable. *See, e.g.*, Richard Decl. Ex. A (Award), at ¶ 815 (detailing Colombia's attempted enforcement of one of the Measures in Breach through a payment order warning of "seizure, appraisal and foreclosure of [CMSA's] assets" in the event of non-payment). On that basis, the Tribunal ordered Colombia to indemnify Petitioner against future damages caused by the enforcement of the Measures in Breach against CMSA. *Id.* The Tribunal's order of future damages is thus contingent on Colombia's actions: if Colombia enforces the Measures in Breach in the

---

[3] These historical damages reflect Petitioner's losses resulting from CMSA's payments made in relation to two of the eight Measures in Breach. Colombia subsequently reimbursed CMSA for amounts paid in relation to one of those Measures in Breach (the iron royalties measure), as explained in Petitioner's demand letter to Colombia, which is attached as Exhibit D to the Richard Declaration. Consequently, Petitioner only seeks payment of historical damages in relation to the other Measure in Breach giving rise to historical damages, which amounts to $3,890,050 and is the sum reflected in Petitioner's Prayer for Relief. *See* Ex. D (South32 Demand Letter), at 2-3; *infra* at ¶ 17.

5

future, future damages will be payable; if it does not, no future damages will accrue. *See* Richard Decl. ¶ 14; Richard Decl. Ex. A (Award), at ¶¶ 817, 820.

14. If future enforcement does occur, the Award orders Colombia to "hold South32 . . . harmless from any damages it may suffer as a result of CMSA paying" sums flowing from the Measures in Breach. Richard Decl. Ex. A (Award), at ¶ 839. The Award also sets forth the manner by which those damages are to be calculated: the damages owed will equal the amount of CMSA's payment, reduced by the percentage at which the state taxes income obtained through dividends (and also by the percentage at which the state taxes income in the case of iron royalties), and multiplied by Petitioner's ownership interest in CMSA, *see* Richard Decl. Ex. A (Award), at ¶¶ 817, 842-43, 887, as rectified by the Decision on Rectification, Richard Decl. Ex. A (Decision on Rectification), at ¶ 101(4).

15. The Tribunal ordered compensation for any future damages to be accompanied by interest at a rate equal to the average annual U.S. Prime rate plus 2%, compounded semi-annually from the date on which CMSA makes payments resulting from the enforcement of the Measures in Breach until the date of indemnification by Colombia. Richard Decl. Ex. A (Award), at ¶ 887; Richard Decl. ¶ 12.

16. The Tribunal also ordered Colombia to pay Petitioner's arbitration costs in the amount of $5,050,000, plus interest at a rate equal to the average annual U.S. Prime rate plus 2%, compounded semi-annually from June 21, 2024 (the Award date) to the date of payment. *See* Richard Decl. Ex. A (Award), at ¶¶ 877, 887; Richard Decl. ¶ 12.

17. To date, Colombia has paid $629,367 in partial satisfaction of the amount ordered by the Tribunal as compensation for historical damages. *See* Richard Decl. ¶ 13; Richard Decl. Ex. D (South32 Demand Letter), at 2-3. Thus, as of March 4, 2025, the total amount of historical

6

damages, arbitration costs, and interest due under the Award that Colombia has not paid is $9,997,869.[4]  *See* Richard Decl. ¶ 14.  No future damages have yet accrued.

## LEGAL BASIS FOR RELIEF

### I. This Court Has Jurisdiction to Recognize and Enforce the Award Because Colombia Does Not Benefit from Sovereign Immunity.

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which provides that the United States District Courts shall have original subject matter jurisdiction over any nonjury civil action against a foreign State unless the foreign State is entitled to immunity under the FSIA or an applicable international agreement.

19. Colombia is not entitled to immunity in this action for two independent reasons. First, Colombia waived immunity for the purpose of this Petition by becoming a party to the ICSID Convention.  *See* 28 U.S.C. § 1605(a)(1); *Blue Ridge Invs., LLC v. Republic of Argentina*, 735 F.3d 72, 84 (2d Cir. 2013) (finding that the state party "waived its sovereign immunity by becoming a party to the ICSID Convention"); *see also NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir. 2024) (noting that the "waiver issue" has been endorsed in this circuit but declining to decide the question given the clear grant of immunity through the "arbitration exception" in 28 U.S.C. § 1650(a)(6)).  Second, Colombia is not entitled to immunity because this Petition seeks to recognize and enforce an arbitration award made pursuant to the ICSID Convention, which is a treaty in force in the United States calling for the recognition and enforcement of arbitration awards.  *See* 28 U.S.C. § 1605(a)(6); *Pezold v. Republic of Zimbabwe*, 2023 WL 5547912, at *3 (D.D.C. Aug. 9, 2023), *aff'd*, 2024 WL 4763943 (D.C. Cir. Nov. 13, 2024) ("Courts, including this one, have consistently 'held that the FSIA's arbitration exception

---

[4] Petitioner would be pleased to provide the Court with updated interest calculations at a date closer to the entry of judgment.

7

confers subject matter jurisdiction over petitions to enforce ICSID awards.'") (quoting *Micula v. Gov't of Romania*, 404 F. Supp. 3d 265, 277 (D.D.C. 2019), *aff'd*, 805 F. App'x 1 (D.C. Cir. 2020)). Colombia is therefore not entitled to sovereign immunity in this action.

20. This Court also has subject matter jurisdiction over this action pursuant to 22 U.S.C. § 1650a(b), which provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction over actions and proceedings" to enforce an ICSID award. *See Micula*, 404 F. Supp. 3d at 269 (holding that 22 U.S.C. § 1650a(b) grants district courts subject matter jurisdiction over actions or proceedings to recognize and enforce ICSID awards).

21. This Court may exercise personal jurisdiction over Colombia pursuant to 28 U.S.C. § 1330(b), which provides that district courts have personal jurisdiction over a foreign State that, like Colombia in this action, is not entitled to immunity, provided that service of process is effected in accordance with 28 U.S.C. § 1608. Petitioner intends to serve process in a timely manner on Colombia pursuant to 28 U.S.C. § 1608(a), including, if required, through the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

22. Venue is proper in this district under 28 U.S.C. § 1391(f)(4), which provides that a party may bring a civil action against a foreign State in the United States District Court for the District of Columbia.

23. This Court therefore has subject matter jurisdiction to enforce the Award, has personal jurisdiction over Colombia, and the District of Colombia is the proper venue for this action.

**II.     The Court Should Not Entertain Any Substantive Challenges to the Award.**

24.     This Court should not entertain any substantive challenges to the Award.  Article 53(1) of the ICSID Convention explicitly prevents parties to an ICSID arbitration from challenging the substance of an award in court:

> The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention.  Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention.

*See* Richard Decl. Ex. B (ICSID Convention Excerpts), at Art. 53(1).  Section 1650a similarly provides that the Federal Arbitration Act ("FAA") does not apply to the enforcement of ICSID Convention awards.  22 U.S.C. § 1650a; *see Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Exteriores*, 87 F.4th 510, 520 (D.C. Cir. 2023) ("Section 1650a . . . expressly forecloses collateral attack on ICSID awards in federal courts by excluding ICSID enforcement actions from the purview of the Federal Arbitration Act"); *see also Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 117-18 (2d Cir. 2017) (noting that a plenary proceeding to recognize and enforce an ICSID award does not allow a respondent to put forth substantive defenses or defenses grounded in the FAA).

25.     Accordingly, Colombia may not collaterally attack the Award in this proceeding.  Colombia must raise any challenges to perceived defects in the Award through ICSID's annulment mechanism.  *See Micula v. Gov't of Romania*, 101 F.4th 47, 53 (D.C. Cir. 2024) ("Under the ICSID Convention, the 'only route for setting aside an ICSID Arbitral Tribunal's award is through the . . . annulment process.'") (quoting *Valores Mundiales*, 87 F.4th at 515).  To date, Colombia has not moved to annul the Award.  *See* Richard Decl. ¶ 13.  Further, no stay of enforcement has been requested or put in place, leaving no bar to recognition or enforcement of the Award.  *See id*.; *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela,* 2022 WL 17370242, at *2 (D.D.C.

9

Aug. 3, 2022) ("[E]xcept to the extent that enforcement is stayed, the tribunal's award remains binding on the parties and . . . not subject to any appeal or any other remedy other than those set forth in the ICSID Convention.") (internal quotation marks omitted).

26. Nor does this Court have cause to engage in an examination of the Award's merits. *Valores Mundiales*, 87 F.4th at 520 ("By removing ICSID awards from the FAA's purview, Congress rejected the possibility that the FAA's grounds for vacatur could be applied to an ICSID award, thus reducing the scope of judicial review of ICSID awards below even the 'extremely limited' review available under the FAA."). Instead, this Court need only "ensure that it has subject-matter and personal jurisdiction; that the award is authentic; and that its enforcement order tracks the award"—all of which is satisfied here. *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 268 (D.D.C. 2022) (explaining the "exceptionally limited" role played by courts in confirming ICSID arbitration awards).

### III. The Award Must Be Given Full Faith and Credit Pursuant to 22 U.S.C. § 1650a.

27. Article 54(1) of the ICSID Convention requires Contracting States to "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." Richard Decl. Ex. B (ICSID Convention Excerpts), at Art. 54(1).

28. To fulfill this obligation, the United States passed implementing legislation that requires United States District Courts to give full faith and credit to ICSID awards. 22 U.S.C. § 1650a(a) provides:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID] convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act

10

> (9 U.S.C. § 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the [ICSID] convention.

Recognition of the award and enforcement of the pecuniary obligations therein is thus required by the text of Section 1650a and this Court's jurisprudence. *See, e.g.*, *Micula*, 101 F.4th at 54 ("Congress enacted Section 1650a . . . to give effect to the United States' treaty obligations under the ICSID Convention, requiring U.S. courts to give 'full faith and credit' to ICSID awards."); *Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*, 904 F. Supp. 2d 131, 132-33 (D.D.C. 2012) (noting that courts are "*required* by statute to give the Award full faith and credit and confirm it accordingly" (emphasis in original)).

29.  As explained above, the Award grants Petitioner historical damages, an indemnity for future damages, costs, and interest, all of which is pecuniary within the meaning of Article 54 of the ICSID Convention and 22 U.S.C. § 1650a.[5] Accordingly, because this Court has subject matter jurisdiction over the dispute, personal jurisdiction over the parties, and has received an authentic certified copy of the Award, *see* Richard Decl. Ex. A (Award), this Court should recognize and enforce the Award in its entirety.

---

[5] Just as the award of historical damages is pecuniary, *see ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, 628 F. Supp. 3d 1, at 4-5, 9-10 (D.D.C. 2022), so too is the award of future damages by way of an indemnity. That a subset of damages is contingent on Colombia enforcing the Measures in Breach does not change the fact that those damages will be fully satisfiable through the payment of money, a quintessentially "pecuniary" obligation. *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 2015 WL 926011, at *2 (S.D.N.Y. Mar. 4, 2015) (quoting Black's Law dictionary for the principle that, in the context of the ICSID Convention and section 1650a, "[p]ecuniary" means "of, relating to, or consisting of money; monetary," and finding that "interest is monetary, for it involves the payment of money"); *Valores Mundiales,* 2022 WL 17370242, at *12 (adopting the holding of *Mobil Cerro* and approvingly referencing the Black's Law dictionary definition of "pecuniary"); *see also* Richard Decl. Ex. A (Award), at ¶¶ 821-22; Richard Decl. Ex. A (Decision on Rectification), at ¶ 101(2) (Tribunal noting that its award of future damages "is a pecuniary order for an amount to be determined in the future").

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that the Court enter an order:

a) Recognizing and enforcing the Award as a judgment of this Court, pursuant to 22 U.S.C. § 1650a and Article 54 of the ICSID Convention;

b) Entering judgment in favor of Petitioner and against Colombia in the amount of the full value of the Award, *i.e.*:

   i. the remaining unpaid damages awarded by the Tribunal in the amount of $3,890,050, plus interest at a rate equal to the average annual U.S. Prime rate plus 2%, compounded semi-annually, from July 27, 2023 until the date of judgment;

   ii. costs awarded by the Tribunal in the amount of $5,005,000, plus interest at a rate equal to the average annual U.S. Prime rate plus 2%, compounded semi-annually, from June 21, 2024 until the date of judgment;

   iii. post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961; and

   iv. requiring Colombia to indemnify Petitioners against any future damages caused by the enforcement of the Measures in Breach as required by ¶ 887(3) of the Award, as rectified by ¶ 101 of the Decision on Rectification, and to pay interest on any future damages as required by ¶ 887(7) of the Award;

c) Ordering Colombia to pay the costs of this proceeding; and

d) Granting Petitioner such other and further relief as the Court deems just and proper.

Dated: March 4, 2025  
       New York, New York

Respectfully submitted,

By:   */s/ Elliot Friedman*  
Elliot Friedman, D.C. Bar No. NY0106  
elliot.friedman@freshfields.com  
David Y. Livshiz, D.C. Bar No. NY0269  
david.livshiz@freshfields.com  
Paige von Mehren (*pro hac vice* forthcoming)  
paige.vonmehren@freshfields.com  
Elizabeth R. Lewis (*pro hac vice* forthcoming)  
liz.lewis@freshfields.com  
FRESHFIELDS US LLP  
3 World Trade Center  
175 Greenwich Street  
51st Floor  
New York, NY 10007  
Telephone: (212) 277-4000

*Attorneys for Petitioner*  
*South32 SA Investments Limited*

13