IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTH32 SA INVESTMENTS LIMITED,<br><br>　　　　　　　　Petitioner,<br><br>　　v.<br><br>REPUBLIC OF COLOMBIA<br><br>　　　　　　　　Respondent. | Civil Action No. ___ |

**DECLARATION OF CAROLINE S. RICHARD**

I, Caroline S. Richard, declare pursuant to 28 U.S.C. § 1746 as follows:

1.　　I am an attorney and a partner with the law firm Freshfields US LLP. I am counsel for Petitioner South32 SA Investments Limited ("South32" or "Petitioner") in the arbitration against the Republic of Colombia ("Colombia") underlying this enforcement proceeding (the "Arbitration"). I make this declaration based on my personal knowledge obtained during my representation of Petitioner in the Arbitration, my review of the record of the Arbitration, and the exhibits attached to this declaration.

2.　　I respectfully submit this declaration in support of Petitioner's Petition to Recognize and Enforce an ICSID Arbitration Award. The Petition seeks entry of a judgment recognizing and enforcing the arbitration award dated June 21, 2024 (the "Award") rendered in Petitioner's favor against Colombia pursuant to the Bilateral Agreement for the Promotion and Protection of Investments between the Government of the United Kingdom of Great Britain and Northern Ireland and Republic of Colombia, U.K.-Colom., Mar. 17, 2010, GR. BRIT. T.S. No. 24

(2014) (Cm 8973) ("U.K.-Colombia BIT"). The Arbitration was conducted under the rules of the International Centre for Settlement of Investment Disputes ("ICSID") and pursuant to the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"). The Arbitration was captioned *South32 SA Investments Limited v. Republic of Colombia*, ICSID Case No. ARB/20/9.

3. Certain clerical errors in the Award were rectified as a result of the Decision on Request for Rectification dated January 29, 2025 (the "Decision on Rectification"), which forms part of the Award according to Article 49(2) of the ICSID Convention.

4. A true and correct copy of the Award, certified by the Acting Secretary General of ICSID, together with a true and correct copy of the Decision on Rectification, certified by the Secretary General of ICSID, are attached to this Declaration as Exhibit A.[1] True and correct copies of the relevant articles of the ICSID Convention are attached to this Declaration as Exhibit B. A true and correct copy of the U.K.-Colombia BIT is attached hereto as Exhibit C. A true and correct copy of South32's letter to Colombia demanding compliance with the Award, with financial account information redacted, is attached hereto as Exhibit D.

5. The Arbitration arose out of a series of measures undertaken by the Colombian government related to the assessment of royalties from Cerro Matoso S.A. ("CMSA"), Petitioner's subsidiary which held the right to exploit Cerro Matoso, a nickel mine in Colombia. *See* Ex. A (Award), at ¶¶ 46-47, 49, 56, 61. CMSA did so under concession contracts 866 and 1727 (the "Concessions") between 1982 and 2012, and thereafter under mining contract 51 ("Contract 51"). *See id*. at ¶¶ 54, 56. CMSA is required to pay royalties to Colombia in consideration for the right

---

[1] The Award and Decision on Rectification were rendered in both English and Spanish. Attached as Exhibit A are the English versions of the Award and Decision on Rectification.

to exploit the Cerro Matoso mine. These royalties are calculated by multiplying: (i) the quantity of nickel extracted; (ii) by a royalty rate (initially set at 8% under the terms of the Concessions, and later increased to 12% through the 1994 Royalty Law that would only apply to contracts executed or extended after the entry into force of the Law); and then (iii) by a reference price for nickel ore (calculated using a formula initially set out in the Concessions and later set out in a regulation, Resolution 293, adopted in 2015) from which a percentage of certain costs was to be deducted (80–100% of costs were deductible under the terms of the Concessions, later reduced to 75% pursuant to the Royalty Law). *Id.* at ¶¶ 54-55, 70-79.

6. Beginning in 2015, Colombia adopted nine different measures that Petitioner alleged to be in breach of the terms of the U.K.-Colombia BIT. These measures sought to, among other things:

> a. retroactively reassess royalties paid by CMSA between 2005 and 2012 on the alleged basis that they had been calculated applying:
>
>> i. the wrong royalty rate and percentage of deductible costs;[2] and
>>
>> ii. the incorrect reference price formula;[3]

---

[2] Throughout the duration of the Concessions, Colombia had only applied the 12% royalty rate and 75% cost deduction rate set out under the Royalty Law to Concession 866 after it was extended in 2007 (and never to Concession 1727, which was not extended) in accordance with the applicable framework. However, after 2018, Colombia changed its interpretation, alleging that the 12% royalty rate and the 75% cost deduction rate should have applied to both Concessions beginning in 2005, and it retroactively reassessed past royalties paid by CMSA on that basis. *See* Richard Decl. Ex. A (Award), at ¶¶ 70-72, 235-40, 270-74.

[3] Whereas Colombia had applied the contractually agreed reference price formula throughout the duration of the Concessions, after 2015, Colombia asserted that the formula set out in Resolution 293 of 2015 should be applied retroactively to 2005. *See* Richard Decl. Ex. A (Award), at ¶¶ 73-76, 380-84.

3

    b. retroactively reassess royalties paid by CMSA between 1982 and 2012 on the alleged basis that they had been calculated by improperly deducting certain costs, *see id*. at ¶¶ 77-79, 487-88; and

    c. retroactively charge iron royalties over the iron oxide contained in the nickel ore developed by CMSA, even though Colombia had previously only charged nickel royalties, *see id*. at ¶¶ 80-82, 565-74.

7. The details of the underlying dispute are set out more fully in paragraphs 46 to 88 of the Award filed concurrently with the present declaration.

8. On March 11, 2020, Petitioner filed a request for arbitration against Colombia, alleging that Colombia had breached the U.K.-Colombia BIT by seeking to arbitrarily and retroactively reassess past royalties paid by CMSA over more than 40 years, and to arbitrarily assess royalty payments due from CMSA from 2015 onwards. On November 17, 2020, an ICSID arbitral tribunal was constituted to adjudicate the dispute between Petitioner and Colombia. *See id*. at ¶ 10. The Tribunal was composed of the President, Ms. Deva Villanúa, a national of Spain who was appointed by agreement of the parties; Professor Guido S. Tawil, a national of Argentina and Portugal who was appointed by Petitioner; and Professor Andrés Jana Linetzky, a national of Chile and Portugal who was appointed by Colombia (the "Tribunal"). *Id*. at ¶ 9.

9. In the Arbitration, Petitioner alleged that Colombia had breached the U.K.-Colombia BIT by treating Petitioner unfairly and inequitably through Colombia's adoption of arbitrary, inconsistent, and retroactive measures. *Id*. at ¶ 88. Petitioner also alleged that Colombia breached the BIT by failing to provide a stable legal and business environment for Petitioner's investment. Petitioner sought (*i*) compensation for historical damages arising from Colombia's

breaches, and (*ii*) an indemnity for future damages should Colombia continue to pursue its measures in breach of the U.K.-Colombia BIT. *Id*.

10. The resulting arbitration proceedings were extensive and both parties participated fully. The Arbitration involved written submissions of more than a thousand pages over multiple rounds of pre-hearing briefing, as well as document production by both parties. *Id*. at ¶¶ 14-21; 42-44. The Tribunal conducted a hearing in Washington, D.C. from March 15-17, 2023, *id*. at ¶ 35, which involved the examination of witnesses and experts. After the conclusion of the hearing, both parties submitted post-hearing briefs as well as a Joint Valuation Model for the assessment of damages. *Id*. at ¶¶ 42-44. Colombia contested the Tribunal's jurisdiction, the merits of the dispute, and Petitioner's claim for damages. Petitioner likewise participated fully at all stages of the Arbitration.

11. On June 21, 2024, the Tribunal issued the Award. The Tribunal held that, on eight of the nine challenged measures ("Measures in Breach"),[4] Colombia had violated the guarantee of fair and equitable treatment contained in the U.K.-Colombia BIT, s*ee* Ex. A (Award), at ¶¶ 755-56; Ex. C (U.K.-Colombia BIT), at Art. II. 3, 4, and awarded historical damages, an indemnity for future pecuniary damages, and associated interest and costs. Certain clerical errors in the Award were rectified on January 29, 2025 through the Decision on Rectification, which forms part of the Award.

---

[4] The Tribunal found that all challenged measures were in breach of the U.K.-Colombia BIT with the sole exception of Petitioner's claim in relation to the *prospective* application of a 2015 resolution establishing a new reference price methodology (although the Tribunal found that the *retroactive* application of that methodology breached the U.K.-Colombia BIT). Petitioner's appointed arbitrator, Professor Guido S. Tawil, dissented from the majority's view on the prospective application of the reference price methodology. *See* Ex. A (Award), at ¶ 368, n.253, ¶ 423, n.304.

12. Specifically, the Tribunal awarded to Petitioner (*i*) $4,519,417[5] in historical damages plus interest at a rate equal to the average annual U.S. Prime rate plus 2%, compounded semi-annually, from July 27, 2023 until the date of payment by Colombia; (*ii*) an indemnity for any future damages caused by Colombia's enforcement of the Measures in Breach in the future, plus interest at a rate equal to the average annual U.S. Prime rate plus 2%, compounded semi-annually, from the date on which CMSA makes any such future payments until the date of indemnification by Colombia; and (*iii*) arbitration costs in the amount of $5,050,000, plus interest at a rate equal to the average annual U.S. Prime rate plus 2%, compounded semi-annually, from June 21, 2024 until the date of payment by Colombia. Ex. A (Award), at ¶ 887, as rectified by the Decision on Rectification, Ex. A (Decision on Rectification), at ¶ 101(4).

13. To date, Colombia has paid $629,367 in partial satisfaction of the $4,519,417 ordered by the Tribunal as compensation for historical damages, *see* Ex. D (South32 Demand Letter) at 2-3, and has not moved to annul the award through ICSID's annulment mechanism. Colombia has likewise not requested a stay of enforcement of the Award and no such stay has been issued. Given that Colombia's obligation to comply with the Award is limited only by a stay of enforcement, and no such stay has been issued, recognition and enforcement of the Award is warranted. *See* Ex. B (ICSID Convention Excerpts), at Art. 53(1).

14. As of March 4, 2025, the total amount due under the Award is $9,997,869 consisting of: (*i*) the remaining $3,890,050 in historical damages, (*ii*) $690,966 in interest on the

---

[5] These historical damages reflect Petitioner's losses resulting from CMSA's payments made in relation to two of the eight Measures in Breach. Colombia, however, subsequently reimbursed CMSA for amounts paid in relation to one of those Measures in Breach (the iron royalties measure), as explained in Petitioner's Demand Letter to Colombia. Consequently, Petitioner only seeks payment of historical damages in relation to the other Measure in Breach giving rise to historical damages, which amounts to $3,890,050 and is the sum reflected in Petitioner's Prayer for Relief. *See* Ex. D (South32 Demand Letter) at 2-3.

historical damages, (*iii*) $5,050,000 in arbitration costs, and (*iv*) $366,853 in interest on the arbitration costs. Since June 21, 2024 (the Award date), Colombia has not enforced any of the Measures in Breach against CMSA, such that no indemnity for future damages is yet payable. However, if Colombia enforces the Measures in Breach, and CMSA makes corresponding payments, such damages will be readily quantifiable.

15.  No prior application for this or similar relief has been made to this District Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 4, 2025　　　　　By: _____
　　Washington, D.C.　　　　　　　　　　　Caroline S. Richard